# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAROLD COOK,<br>GERUND MICKENS,<br>TERRELL HUNTER,<br>DOUGLAS LEE, and<br>JESUS ASHANTI | No. 3:17-cr-00065 (SRU) |

## RULING ON MOTION TO DISMISS COUNT TWO OF THE INDICTMENT

Defendants Harold Cook, Gerund Mickens, Terrell Hunter, and Douglas Lee[1] ("the defendants") are charged with crimes stemming from the kidnapping, robbery, and murder of Charles Teasley in Hartford, Connecticut on January 9, 2009. The indictment charges the defendants with kidnapping resulting in the death of a person, in violation of 18 U.S.C. § 1201(a)(1) & (2) (Count One); with firearm-related murder and kidnapping, in violation of 18 U.S.C. §§ 924(c), 924(j)(1) & (2), 1111(a), & 1201(a)(1) & (2) (Count Two); and with firearm-related murder and Hobbs Act robbery, in violation of 18 U.S.C. §§ 924(c), 924(j)(1) & (2), 1111(a), & 1951(a) (Count Three).

The defendants filed a Motion to Dismiss Count Two of the Indictment, arguing that the government failed to state an offense. Mot. to Dism., Doc. No. 203 at 1. Principally, the defendants argue that under the categorical approach, kidnapping cannot serve as the predicate crime of violence under either the "force clause" or the "residual/risk-of-force clause" of Section 924(c)(3). *Id.*; *see* 18 U.S.C. §§ 924(c)(3)(A), (B). On July 19, I held oral argument on a number

---

[1] Defendant Jesus Ashanti is also charged in the Indictment but does not join his co-defendants in this Motion to Dismiss.

of pre-trial motions filed in this case and I denied the defendants' Motion to Dismiss Count Two on the record, but indicated that I would issue a more thorough written ruling.

I.  **Background**

On January 12, 2009, the body of Charles Teasley was discovered by his friend, Desmond Wright, in a car parked on Colebrook Street in Hartford, Connecticut. Teasley, a known drug dealer, had been shot multiple times in the head.

On March 30, 2017, Harold Cook, Gerund Mickens, Terrell Hunter, Douglas Lee, and Jesus Ashanti were all charged in a three-count indictment with Teasley's kidnapping, robbery, and murder. According to the allegations in the indictment, Lee set up Teasley to be robbed by arranging to buy cocaine from him and providing Cook with the details of the planned transaction. When Teasley went to meet Lee, he was ambushed by Cook, Mickens, Hunter, and Ashanti, who kidnapped Teasley by binding his hands with zip-ties and forcing him into the back of his car. Cook, Mickens, Hunter, and Ashanti then assaulted Teasley; forced him to telephone his girlfriend, who brought the defendants a safe hidden at Teasley's residence; and finally murdered Teasley by shooting him in the head at close range.

On March 31, 2017, the court issued warrants for the defendants' arrest. Cook, Mickens, and Hunter were all arrested on April 4, 2017; Lee was arrested on April 6, 2017; and Ashanti was arrested on April 11, 2017. The case was transferred to me by Senior United States District Judge Alfred V. Covello on January 25, 2018.

II. **Discussion**

Federal Rule of Criminal Procedure 12(b)(3) sets forth various defenses and objections that "must be raised by pretrial motion." Those defenses include "defect[s] in the indictment." Fed. R. Crim. P. 12(b)(3)(B)(v). Here, the defendants move to dismiss Count Two of the

indictment pursuant to Rule 12(b)(3)(B)(v) for failure to state an offense. *See* Mot. to Dism., Doc. No. 203. As indicated on the record at oral argument, I deny the motion to dismiss.

The defendants are charged in Count Two with Firearm-Related Murder/Kidnapping pursuant to 18 U.S.C. § 924(j)(1). Section 924(j) imposes additional penalties for certain violations of section 924(c). Section 924(c) requires, as an element of the offense, that the defendants have carried a firearm "during and in relation to any crime of violence." Subsection (3) defines a "crime of violence" as an "offense that is a felony" and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The Second Circuit has referred to clause (A) as the "force clause" and clause (B) as the "risk-of-force clause," though clause (B) is sometimes also referred to as the "residual clause." *United States v. Hill*, 890 F.3d 51, 54 n.5 (2d Cir. 2018). The "crime of violence" alleged in Count Two of the indictment is kidnapping, pursuant to Section 1201(a)(1) which provides, in relevant part:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person … when the person is willfully transported in interstate or foreign commerce … or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense[.]

18 U.S.C. § 1201(a)(1).

The defendants challenge Count Two of the indictment for failure to state an offense, arguing that the crime of kidnapping cannot serve as the predicate crime of violence under either the force clause or the threat-of-force clause. *See* Mot. to Dism., Doc. No. 203. In doing so, the defendants rely on the assumption that the categorical approach applies to determinations

whether a particular predicate crime is a crime of violence within the meaning of section 924(c). *Id*. I recognize that the Second Circuit, as well as a number of other courts around the country, have utilized the categorical approach in deciding whether a charged crime is sufficient to serve as a predicate crime of violence under Section 924(c). *See Hill*, 890 F.3d at 55 (utilizing the categorical approach to review denial of motion for judgment of acquittal and holding that Hobbs Act Robbery is a crime of violence within the meaning of section 924(c)(3)). However, I also recognize that a number of courts from other districts and circuits around the country have rejected the use of the categorical approach in the context of a motion to dismiss a section 924(c)(3) charge, and I now join them in doing so.

The categorical approach requires "courts to identify the minimum criminal conduct necessary for conviction under a particular statute … [and i]n doing so, courts look only to the statutory definitions—i.e., the elements—of [the] … offense[], and *not* to the particular [underlying] facts." *Hill*, 890 F.3d at 55 (emphasis in original) (internal quotation marks omitted). Practically speaking, the categorical approach "ignor[es] the particular facts of the case" and allows the court to "focus solely on whether the elements of the crime of conviction sufficiently match the elements of" the generic offense. *Mathis v. United States*, —U.S.—, 136 S. Ct. 2243, 2248 (2016). The Supreme Court adopted the categorical approach in 1990 when it was "called upon to determine the meaning of 'burglary'" for purposes of determining whether a sentence enhancement under the Armed Career Criminal Act ("ACCA") was appropriate. *Taylor v. United States*, 495 U.S. 575, 577-78 (1990). The ACCA "provides a sentence enhancement for a defendant who is convicted under 18 U.S.C. § 922(g) (unlawful possession of a firearm) and who has three prior convictions for" violent felonies. *Id*.; 18 U.S.C. § 924(e). The petitioner in *Taylor* pled guilty to possession of a firearm by a convicted felon and, at the

4

time of his plea, had four prior convictions: robbery; assault; and two second-degree burglaries. *Taylor*, 495 U.S. at 578. At sentencing, the District Court determined that the burglary convictions satisfied the statute and enhanced Taylor's sentence pursuant to the ACCA. *Id*. The Supreme Court, in analyzing whether "burglary" was considered a predicate violent felony for purposes of the ACCA, looked at the legislative history and determined there was "[no] indication that Congress ever abandoned its general approach, in designating predicate offenses, of using uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence … and that are likely to be committed by career offenders." *Id*. at 590. The Court went on to answer the question "whether the sentencing court in applying [the ACCA] must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." *Id*. at 600. It held that the ACCA "mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id*.

As support for its determination that the categorical approach applied, the Court first highlighted the language of the ACCA which "refers to 'a person who … has three previous *convictions*' for … three previous violent felonies." *Id*. (emphasis added). Second, the Court looked again to the legislative history and determined that Congress "generally took a categorical approach to predicate offenses" and noted that there was no indication that Congress intended "sentencing court[s] to engage in an elaborate factfinding process regarding the defendant's prior offenses." *Id*. at 601. Lastly, the Court identified the "practical difficulties and potential unfairness of a factual approach" and contemplated whether a sentencing court could conclude on a review of the record whether the defendant's prior convictions satisfied the ACCA enhancement or whether that would "abridg[e a defendant's] right to a jury trial." *Id*. The Court

5

also opined that the sentencing court often does not have any record of the underlying offenses, such as when a defendant pleads guilty. *Id*. Accordingly, the Court determined that a categorical approach, allowing a sentencing court to "look only to the fact of conviction and the statutory definition of the prior offense," was appropriate in determining whether prior convictions were necessarily for crimes of violence and thus whether the ACCA sentencing enhancement applied. *Id*. at 602. The Supreme Court has, since *Taylor*, reinforced the use of the categorical approach for ACCA purposes, opining that the ACCA "cares not a whit" about the facts of the underlying convictions and focuses only on the elements in deciding whether it satisfies the test for a violent crime. *Mathis*, 136 S. Ct. at 2248.

As noted by the Supreme Court in *Taylor*, 495 U.S. at 601, the categorical approach was created, in part, to alleviate any Sixth Amendment concerns when sentencing a defendant under ACCA, because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Descamps v. United States*, 570 U.S. 254, 269 (2013) ("Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerts if it went beyond merely identifying a prior conviction."). The Supreme Court held in *Descamps*, that "*Taylor*'s elements-centric categorical approach comports with ACCA's text and history, avoids Sixth Amendment concerns that would arise from sentencing courts' making factual findings that properly belong to juries, and averts 'the practical difficulties and potential unfairness of a factual approach.'" 570 U.S. at 256 (quoting *Taylor*, 495 U.S. at 601).

6

In light of that precedent, I recognize the importance of utilizing the categorical approach in the situations for which it was created. The present case, however, is not one of those situations and differs in ways that negate the need to utilize the categorical approach. The Supreme Court in *Taylor* enumerated the reasons why the categorical approach made sense in an ACCA sentencing situation: (1) the sentencing court was reviewing a defendants' *prior convictions* for purposes of a possible sentence enhancement; (2) the sentencing court should not engage in "elaborate factfinding;" and (3) there would be Sixth Amendment and procedural concerns with using a factual, as opposed to categorical, approach. *Taylor*, 495 U.S. at 600-01. None of those concerns arises here.

First, I am not determining whether a sentence enhancement is appropriate, nor am I analyzing the defendants' prior convictions. Instead, the motion to dismiss challenges the legal sufficiency of a count that requires the government to prove that "during and in relation to any crime of violence" the defendants used or carried a firearm. 18 U.S.C. § 924(c)(1)(A). At the motion to dismiss stage, the court's inquiry is the converse of the categorical approach: Instead of deciding whether *every* manner of commission of the crime of kidnapping would constitute a crime of violence, I need only decide whether *some* manner of commission of that crime could constitute a crime of violence. If so, the sufficiency inquiry shifts to the Rule 29 and post-trial motion phase when it will be appropriate to decide whether the government's evidence is sufficient to prove that the defendants actually did carry or use a firearm during the commission of a crime of violence. I have no need to engage in "elaborate factfinding" in order to determine that the kidnapping, as alleged, satisfies the predicate crime of violence threshold. Similarly, because the jury will be finding facts, including whether the alleged kidnapping satisfies the "crime of violence" element of the charged offense, there are no Sixth Amendment concerns

7

present. Thus, the fundamental premise upon which the categorical approach depends is absent at the pretrial motion to dismiss stage. In short, none of the concerns the Supreme Court enumerated in *Taylor* is present here and, therefore, it is not appropriate to employ the categorical approach in this procedural setting.

I recognize that the Second Circuit has recently applied the categorical approach in determining whether a crime, there Hobbs Act robbery, constituted a "crime of violence" for purposes of section 924(c)(3). *Hill*, 890 F.3d at 54. When applying the categorical approach to answer that question, the Second Circuit cited a number of decisions in which the Supreme Court utilized the categorical approach. *Id.* at 55. All of those decisions, however, analyzed the categorical approach's use for purposes of determining whether ACCA's statutory sentencing range applied; they did not address whether a *charged predicate offense*, as opposed to a prior conviction, constituted a crime of violence, and did not hold that the categorical approach should be employed at the pretrial motion to dismiss stage. *Id.*; *see Taylor*, 495 U.S. at 600; *Mathis*, 136 S. Ct. at 2248-49; *Descamps*, 570 U.S. at 257-58. The Second Circuit in *Hill* also cited its prior decision in *United States v. Acosta*, in which the Second Circuit applied the categorical approach to section 924(c)(3). 470 F.3d 132, 135 (2d Cir. 2006) (per curiam). In doing so, however, the Court in *Acosta* relied on a case in which the Supreme Court determined that the categorical approach should be used in determining whether prior *convictions* were considered crimes of violence for purposes of 18 U.S.C. § 16. *Id.* (referencing *Leocal v. Ashcroft*, 543 U.S. 1, 3-4 (2004)).

In both *Hill* and *Acosta*, the Second Circuit seemed to assume rather than decide that the categorical approach should be employed to determine whether the section 924(c) charged offense during which a firearm was allegedly used or carried was a crime of violence. Both

decisions relied upon precedents applying the categorical approach to determine issues that do not affect the legal sufficiency of the indictment in this case and in contexts inapplicable to the pretrial setting. In short, *Hill* and *Acosta* are distinguishable from this case. The decisions cited by the Second Circuit in *Hill* and *Acosta* all addressed whether a defendant's *prior convictions*, not predicate charged offenses, constituted crimes of violence, and whether a higher statutory sentencing range was appropriate, which, in turn, triggered Sixth Amendment concerns. None of those considerations applies at this procedural stage. Indeed, the Second Circuit has itself noted that "[t]he Supreme Court's modern categorical approach jurisprudence is confined to the post-conviction contexts of criminal sentencing and immigration deportation cases." *Weingarten v. United States*, 865 F.3d 48, 59 (2d Cir. 2017) (holding that "it was not obvious" at the time of the plaintiff's Motion to Dismiss that the categorical approach applied to 18 U.S.C. § 3283). Accordingly, to the extent that *Hill* and *Acosta* can be read as holding that the categorical approach should be used at the pretrial motion to dismiss stage[2] to determine whether a defendant used or carried a firearm "during and in relation to any crime of violence" as required to state an offense under section 924(c)(3), I respectfully disagree with those decisions.

At least two circuits have rejected and/or criticized the use of the categorical approach in in the context of section 924(c)(3), one of which also arose at the pretrial motion to dismiss stage, and I find their reasoning persuasive. The Third Circuit distinguished the procedural posture of a pretrial motion to dismiss from an ACCA sentencing determination and held that "[w]hen [a] predicate offense … and the [section] 924(c) offense are contemporaneous and tried to the same jury, the record of all necessary facts are before the district court. The jury's

---

[2] It is worth noting that the Second Circuit in *Hill* addressed a post-judgment motion for acquittal, whereas here I am addressing a pretrial motion to dismiss. Therefore, I do not read *Hill* as providing binding guidance that the categorical approach applies when deciding a pretrial motion to dismiss.

9

determination of the facts of the charged offenses unmistakably shed light on whether the predicate offense was committed with 'the use, attempted use, or threatened use of physical force against the person or property of another.' The remedial effect of the 'categorical' approach is not necessary." *Robinson*, 844 F.3d 137, 141 (3d Cir. 2016). The Third Circuit "conclude[d] that analyzing a [section] 924(c) predicate offense in a vacuum is unwarranted when the convictions of contemporaneous offenses, read together, necessarily support the determination that the predicate offense was committed with the 'use, attempted use, or threatened use of physical force against the person or property of another.'" *Id.* at 143. The Fourth Circuit also heavily criticized the use of the categorical approach in determining whether a predicate offense was a "crime of violence" under Section 924(c)(3). *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017) (applying the categorical approach nonetheless because its "precedent require[d] application of that approach"). The Fourth Circuit noted that the categorical approach was "a particularly bad fit" in cases arising under section 924(c) because it "is a firearms enhancement provision that penalizes, in broad terms, the use of a firearm during violent crimes." *Id*.

Moreover, I join my colleagues in district courts across the country who have called into question the use of the categorical approach in section 924(c)(3) cases, particularly when dealing with a pretrial motion to dismiss. *See, e.g., United States v. McDaniels*, 2015 WL 7455539, at *2–3 (E.D. Va. Nov. 23, 2015) (refusing to apply the categorical approach for a pretrial motion to dismiss and sending the determination of "crime of violence" to the jury as a question of fact); *United States v. Standberry*, 2015 WL 5920008, at *2 (E.D. Va. 2015) (questioning use of categorical approach outside of sentencing context in which cold record review is required); *United States v. Brownlow*, 2015 WL 6452620, at n. 3 (N.D. Ala. Oct. 26, 2015) ("[T]he future of a 'categorical approach' to defining a crime of violence under § 924(c) may be short lived.");

*United States v. Church*, 2015 WL 7738032, at *3–4 (N.D. Ind. Dec. 1, 2015) ("[T]his Court … looks to the purpose of the categorical approach and questions whether the assumption that it applies to a § 924(c) offense is not misguided."); *United States v. Woodley*, 2015 WL 7770859, at *4 (E.D. Mich. Dec. 3, 2015) (stating that the reasoning for using the categorical approach does not apply with much force in a § 924(c) pretrial case).

The use of the categorical approach is inappropriate in a situation such as this: on a pretrial motion to dismiss rather than in the sentencing context, where there is no need for a cold record review, and where a jury will determine whether the predicate offense, as charged, comports with section 924(c)(3). At this stage, the Sixth Amendment concerns that the categorical approach was designed to protect against are not implicated.[3]

### III. Conclusion

For the foregoing reasons, I decline to utilize the categorical approach to determine whether kidnapping can serve as the predicate crime of violence for purposes of Count Two of the indictment. Accordingly, the defendants' Motion to Dismiss (Doc. No. 203) is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 31st day of July 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[3] The defendants also argue in their Motion to Dismiss that the threat-of-force clause, 18 U.S.C. § 924(c)(3)(B), is unconstitutionally vague and, therefore, the government cannot rely on the threat-of-force clause to state an offense in Count Two. I need not address that argument now, however, because I decline to use the categorical approach to determine that kidnapping cannot, as a matter of law, satisfy the force clause, 18 U.S.C. § 924(c)(3)(A). Accordingly, the government does not need to rely on the threat-of-force clause to obtain a conviction on Count Two, and the defendants' argument regarding the vagueness of that clause can better be addressed in any post-trial motions challenging a conviction, should there be one, because we will know then whether the government has relied on the force clause, the threat-of-force clause, or both to prove Count Two.