UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>HAROLD COOK, et al. | No. 3:17-cr-65 (SRU) |

### ORDER

On August 21, 2018, after a nearly two-week trial, a jury found Harold Cook, Gerund Mickens, and Terrell Hunter ("the Defendants") guilty of all counts in a three-count indictment.[1] *See* Verdict Form, Doc. No. 320. Count one of that indictment charged the Defendants with kidnapping resulting in the death of a person in violation of 18 U.S.C. §§ 1201(a)(1) and 2. *See* Indictment, Doc. No. 1, at 3. Under section 1201, the penalty for kidnapping resulting in the death of a person is either death or life imprisonment. 18 U.S.C. § 1201(a). Because this case was not a death penalty case, the only available sentence for the Defendants is mandatory life imprisonment. *Id.* The Defendants made a motion asking me to hold that they are not subject to a mandatory life sentence, or, if they are, that section 1201 is unconstitutional under the Fifth Amendment, Eighth Amendment, and the separation of powers doctrine.[2] The Defendants' motion is **DENIED**.

### I. The Defendants are subject to a mandatory life sentence.

The Defendants argue first that they are not subject to a mandatory life sentence because I erred in my jury instructions. Under section 1201(a), a kidnapper "shall be punished by imprisonment for any term of years or life," but "if the death of any person results," the

---

[1] Following the verdict, count two was dismissed on consent on July 12, 2019. *See* Order, Doc. No. 464.
[2] Although Hunter submitted the motion, Cook and Mickens joined it a couple weeks later. *See* Order, Doc. No. 502.

kidnapper "shall be punished by death or life imprisonment." 18 U.S.C. § 1201. The Defendants argue that my instructions were unclear and so the jury may have convicted the Defendants on count one without necessarily finding that a death resulted from the kidnapping. If that were the case, the Defendants argue, the Defendants would not be subject to a mandatory life sentence on count one because "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013). The Defendants submit that the determination whether a death resulted from *the kidnapping* in this case is just such a fact.[3]

The Defendants rely on a portion of my jury instructions, in which I said, with respect to the fifth element of section 1201(a):

> The fifth element that the government must establish beyond a reasonable doubt is that the defendant's acts resulted in the death of the victim. To prove this element, the government must prove that the victim is dead, and that his death resulted from the willful and intentional conduct of the defendant. In order to establish that the defendant's conduct resulted in the death of the victim, the government must prove beyond a reasonable doubt that, but for the defendant's actions, the victim would not have died.

Trial Tr., Doc. No. 409, at 1868. The Defendants point out that the language "resulted from the kidnapping" does not appear in that recitation. *See* Defs.' Mem. of Law, Doc. No. 490-1, at 2–3. Instead, I said that the government must prove that (1) "the defendant's acts resulted in the death of the victim," (2) the victim's "death resulted from the willful and intentional conduct of the defendant," and (3) "but for the defendant's actions, the victim would not have died." As a result, the Defendants argue, we cannot know whether the jury found that "the death resulted from the kidnapping," as required for a mandatory life sentence under section 1201. *See* Defs.'

---

[3] The Defendants concede that "[i]t is unclear whether the if-a-death-results is an element of the offense or a sentencing enhancement." Defs.' Mem. of Law, Doc. No. 490-1, at 3 n.3 (citing *United States v. Brown*, 295 F.3d 152, 155 (1st Cir. 2002)). I need not address that issue because I conclude that the jury did, in fact, find that a death resulted from the kidnapping.

2

Mem. of Law, Doc. No. 490-1, at 3.  In other words, my instructions leave open the possibility that the victim's death resulted from some act, conduct, or action of the Defendants *other than* the kidnapping.

I reject the Defendants' argument because the jury did necessarily find that the victim's death resulted from the kidnapping.  First, the trial transcript reflects that—on two occasions—I instructed the jury exactly as the Defendants argue that I should have.  First, at the beginning of my crime-specific final instructions, in describing count one, I said:

> In Count One, the government charges all three defendants with kidnapping Charles Teasley, which resulted in Mr. Teasley's death.

Trial Tr., Doc. No. 409, at 1861.  And when I returned to count one just moments later to describe it more specifically, I began my instruction:

> Mr. Cook, Mr. Mickens, and Mr. Hunter are all charged in Count One of the indictment with the kidnapping and with the aiding and abetting in the kidnapping, as I will instruct you later, of Mr. Teasley, which resulted in Mr. Teasley's death.

*Id.* at 1862.  It is true that on two other occasions (the Defendants cited only one), I did not explicitly use the word "kidnapping" to refer to the Defendants' conduct and instead said: "defendant's acts," or "defendant's actions," or "the willful and intentional conduct of the defendant."  *See* Trial Tr., Doc. No. 409, at 1863, 1868.  However, the language I used in describing the fifth element in more detail—which omitted use of the word "kidnapping"—was a verbatim recitation of the relevant portions of Sand's Model Jury Instruction on the fifth element.  *See* 2 Modern Federal Jury Instructions-Criminal P 42.01 (2019).

In sum, within just a few minutes, I explained two times explicitly that to find the Defendants guilty on count one, the jury must find that the Government had proven beyond a reasonable doubt that the Defendants kidnapped Mr. Teasley and that Mr. Teasley's death

3

resulted from the kidnapping. On two other occasions, I explained that to find the Defendants guilty on count one, the jury must find that the Government had proven beyond a reasonable doubt that the Defendants kidnapped Mr. Teasley and that Mr. Teasley's death resulted from the Defendants' "acts," "actions," or "conduct." Thus, the trial transcript clearly indicates that I correctly instructed the jury.

The case's context makes it even more certain that the jury found that Mr. Teasley's death resulted from the kidnapping. The Defendants seem not to agree. They argue that the language I used in the latter two instances—"acts," "actions," and "conduct"—could be consistent with a jury finding of "guilty" on count one in the following hypothetical situation: "[A] defendant [] kidnaps a victim; the victim escapes; the defendant comes across the victim on the street a week later by happenstance and there takes the victim's life." Defs.' Reply, Doc. No. 501, at 2. In that situation, the Defendants argue, the victim's death did not result from the kidnapping. *See id.* As the Defendants concede, though, this case hardly resembles the hypothetical. *See id.* Here, nearly two weeks of testimony established that the Defendants kidnapped, robbed, and murdered Mr. Teasley during the course of the kidnapping on January 9, 2009.

Even if the trial transcript and the case's context were not enough, the verdict form makes it absolutely clear that the jury found that Mr. Teasley's death resulted from the kidnapping. The verdict form read, in relevant part, as follows:

**COUNT ONE: Kidnapping Resulting in the Victim's Death**

**Question 1:** With respect to COUNT ONE, charging **Harold Cook** with kidnapping resulting in Mr. Teasley's death, we the jury unanimously find Mr. Cook:

_____ Not Guilty

_____ Guilty

4

**Question 2:** With respect to COUNT ONE, charging **Gerund Mickens** with kidnapping resulting in Mr. Teasley's death, we the jury unanimously find Mr. Mickens:

_____ Not Guilty

_____ Guilty

**Question 3:** With respect to COUNT ONE, charging **Terrell Hunter** with kidnapping resulting in Mr. Teasley's death, we the jury unanimously find Mr. Hunter:

_____ Not Guilty

_____ Guilty

*See* Verdict Form, Doc. No. 320. The jury checked "guilty" under all three questions. *See id.* The trial transcript, the case's context, and the verdict form all indicate the same thing: The jury found the Defendants guilty on count one because it concluded that the Government had proven beyond a reasonable doubt that the Defendants kidnapped Mr. Teasley, who died as a result.

**II.    Section 1201 is not unconstitutional.**

The Defendants argue that, if they are subject to a mandatory life sentence under section 1201, the statute is unconstitutional under the Fifth Amendment as a deprivation of due process; under the Eighth Amendment as a violation of the prohibition against cruel and unusual punishment; and under the separation of powers doctrine. But section 1201 is not unconstitutional, either categorically or as applied here. I will explain in turn why each argument fails.

A. Fifth Amendment

The Defendants argue that section 1201 deprives them of due process of law in violation of the Fifth Amendment because the Fifth Amendment guarantees them an individualized sentencing and section 1201's punishment of mandatory life imprisonment does not allow for

5

that. *See* Defs.' Mem. of Law, Doc. No. 490-1, at 7–9. The Government counters that clear Supreme Court and Second Circuit precedent support the position that mandatory life imprisonment does not violate the Fifth Amendment. *See* Gov't Opp'n, Doc. No. 495, at 5–6. The Government has the better of the argument.

The Supreme Court has been clear that mandatory statutory penalties do not deprive individuals of due process so long as the penalties are not based on arbitrary distinctions. *See Chapman v. United States*, 500 U.S. 453, 464–65 (1991). More particularly, the Court has said:

> Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. But a person who *has* been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.

*Id.* at 465 (internal citations omitted).[4]

The Defendants make no argument that section 1201 makes an arbitrary distinction either categorically or as applied to them. The Defendants simply assert that the "Fifth Amendment . . . cannot tolerate a statutory scheme in which humans are completely and permanently deprived of their liberty and are condemned to die in the custody of the government without *any* consideration of the facts and circumstances of that human being and the offense that he or she committed." Defs.' Mem. of Law, Doc. No. 490-1, at 7–8. That may be the Defendants'

---

[4] The Defendants attempt to distinguish *Chapman* by arguing that *Chapman* was based on the idea that death as a punishment is categorically different from other penalties. *See* Defs.' Mem. of Law, Doc. No. 490-1, at 9 n.6 (noting that *Chapman* relied on *Lockett v. Ohio*, 438 U.S. 586 (1978), which made that point). Today, the Defendants argue, the Supreme Court has at least noted the similarities between the punishment of death and mandatory life imprisonment, which the Defendants call "death by incarceration." *See id.* (citing *Graham v. Florida*, 560 U.S. 48, 69 (2010)). While acknowledging that mandatory life imprisonment without parole is an extraordinarily severe penalty—"the second most severe known to the law," *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991)—I decline to equate them in this case.

conception of mandatory life imprisonment—and it may describe a desirable policy—but it is not the law. Section 1201 does not violate the Fifth Amendment's due process clause.

B. Eighth Amendment

The Defendants argue that either categorically or as applied to them, section 1201's punishment of life imprisonment is cruel and unusual and so violates the Eighth Amendment. *See* Defs.' Mem. of Law, Doc. No. 490-1, at 4–7. The Government argues that section 1201 is constitutional because the Eight Amendment does not guarantee an individualized sentencing to defendants in non-death penalty cases and because the penalty here is not grossly disproportionate to the crime. *See* Gov't Opp'n, Doc. No. 495, at 7. The Government again has the better of the argument.

The Eighth Amendment guarantees individualized sentencing to defendants facing the death penalty, *see Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), and to juveniles facing a life sentence without the possibility of parole, *see Miller v. Alabama*, 567 U.S. 460, 480 (2012). But the Supreme Court has been clear that the Eight Amendment does *not* require an individualized sentencing determination for adults in non-death penalty cases. *See Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) ("Petitioner asks us to extend this so-called 'individualized capital-sentencing doctrine' to an 'individualized mandatory life in prison without parole sentencing doctrine.' We refuse to do so."); *see also Miller*, 567 U.S. at 481 ("So if (as *Harmelin* recognized) 'death is different,' children are different too . . . . Our ruling thus neither overrules nor undermines nor conflicts with *Harmelin*."); *United States v. Gonzalez*, 922 F.2d 1044, 1052 (2d Cir. 1991) ("[T]he Eight Amendment does not compel individualized assessment of a defendant facing a mandatory sentence of life imprisonment without parole."). "The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime."

*United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003). "The Eight Amendment condemns only punishment that shocks the collective conscience of society." *Gonzalez*, 922 F.2d at 1053.

The Defendants' categorical challenge to section 1201 cannot succeed: on-point Supreme Court and Second Circuit precedent forbid it. *Harmelin*, which explicitly survived *Miller*, held that mandatory life sentences without the possibility of parole are not unconstitutional under the Eighth Amendment. *See Harmelin*, 501 U.S. at 994–95. And the Second Circuit has *specifically held* that section 1201's mandatory life sentencing scheme is constitutional. *See United States v. Corbett*, 750 F.3d 245, 252 n.5 (2d Cir. 2014) ("[I]t is well established that Congress may require mandatory minimum criminal sentences, including § 1201(a)(1)'s sentence of life imprisonment where the kidnapper causes any person's death.") (citing *Chapman*, 500 U.S. at 467); *see also Gonzalez*, 922 F.2d at 1052. The Defendants point out that the Supreme Court has "more recently considered [categorical] Eighth Amendment proportionality challenges involving juvenile defendants." Defs.' Mem. of Law, Doc. No. 490-1, at 5–6 (citing *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012)). The issue animating *Graham* and *Miller*—the age of the offender—is quite distinct from the case here: I am aware from probation records that at the time of the crime (January 9, 2009), Hunter was 27, Cook was 31, and Mickens was 33.[5] Thus, because outside the capital punishment realm "challenges to the proportionality of a sentence have been exceedingly rare," *see Yousef*, 327 F.3d at 163 (citing *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)), and this is not a juvenile case, the Defendants' categorical challenge to section 1201 must fail.

---

[5] To the extent that the Defendants rely on cases and arguments about youth, those arguments are essentially irrelevant. I am aware of one district court that has extended the rule in *Miller*—that life without possibility of parole is an unconstitutional sentence for juveniles—to 18-year-olds. *See United States v. Cruz*, 2018 WL 1541898, at *18 (D. Conn. Mar. 29, 2018). But I do not find that decision instructive here. In any event, the Defendants do not seem to make an age-based argument because they cannot: as mentioned above, at the time of the crime, Hunter was 27, Cook was 31, and Mickens was 33.

8

The Defendants' as-applied challenge must fail, too. The Second Circuit has upheld the constitutionality of the mandatory life imprisonment punishment included in section 1201. *See Corbett*, 750 F.3d at 252 & n.5. Similarly, the Second Circuit has upheld the constitutionality of mandatory life sentences in other statutes that articulate serious crimes. *See, e.g.*, *United States v. Sierra*, 933 F.3d 95, 97 (2d Cir. 2019) (murder in aid of racketeering under 18 U.S.C. § 1959(a)(1)); *Gonzalez*, 922 F.2d at 1053 (murder of an informant under 18 U.S.C. §§ 1111 and 1512). The Defendants make no arguments about why the mandatory life sentence under section 1201 is grossly disproportionate to their crimes in particular. In this case, the Defendants zip-tied Mr. Teasley and put him in the back seat of a car. They kidnapped, robbed, and murdered him. Although a life sentence is extremely severe punishment, their crimes were extremely serious: the punishment is not grossly disproportionate to their crimes. The sentence does not become grossly disproportionate just because it is mandatory under section 1201. *See Harmelin*, 501 U.S. at 995 ("There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is mandatory.") (internal citations and quotations omitted); *see also Sierra*, 933 F.3d at 98.

C. Separation of Powers

The Defendants' final argument is that section 1201 is unconstitutional because it violates the separation of powers doctrine. *See* Defs.' Mem. of Law, Doc. No. 490-1, at 9–11. The Government argues that it is black-letter law that Congress can mandate certain punishments. *See* Gov't Opp'n, Doc. No. 495, at 8–9. Once more, the Government has the better of the argument.

Congress may enact laws with mandatory minimum penalties; such penalties do not categorically violate the separation of powers doctrine. *See, e.g.*, *United States v. Huerta*, 878 F.2d 89, 93 (2d Cir. 1989) ("Congress can constitutionally eliminate all discretion in sentencing

9

judges by establishing mandatory sentences."); *United States v. Vargas*, 204 F. App'x 92, 95 (2d Cir. 2006) ("[I]mposition of a mandatory minimum sentence does not violate separation of powers."). What's more, the Second Circuit has explicitly upheld the mandatory minimum penalty of life imprisonment under section 1201. *See Corbett*, 750 F.3d at 252 n.5.[6] Thus, the Defendants' arguments to the contrary are unavailing.

For the foregoing reasons, the Defendants are subject to a mandatory life sentence under 18 U.S.C. § 1201 and that penalty is not unconstitutional under either the Fifth Amendment, Eighth Amendment, or the separation of powers doctrine.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 25th day of November 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[6] As discussed *supra*, the Second Circuit has also upheld the mandatory minimum penalty of life imprisonment in numerous other contexts. *See, e.g.*, *United States v. Gonzalez*, 682 F.3d 201, 203 (2d Cir. 2012) (with respect to 18 U.S.C. § 3559(c)(1)); *Sierra*, 933 F.3d at 98 (with respect to 18 U.S.C. § 1959(a)(1)).